UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE SLEEP BETTER STORE, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> OGILVY PUBLIC RELATIONS WORLDWIDE, INC. <br><br> Defendant. | Civil Action No. 1:12-mc-00228 <br><br> **ECF CASE** <br><br> (Pending in the District of Minnesota No. 0:11-cv-00621) |

## OGILVY PUBLIC RELATIONS WORLDWIDE INC.'S
## MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL

**DAVIS & GILBERT LLP**

Jennifer Tafet Klausner
1740 Broadway
New York, NY 10019
Telephone:  (212) 468-4800
Fax Telephone:  (212) 468-4888
JKausner@dglaw.com

- and -

**OPPENHEIMER WOLFF & DONNELLY LLP**

| | |
|---|---|
| Andrew S. Hansen | (MN #285894) |
| Samuel R. Hellfeld | (MN #390954) |
| Dennis E. Hansen | (MN #386734) |
| Cynthia S. Wingert | (MN #389122) |

Campbell Mithun Tower
222 South Ninth Street, Suite 2000
Minneapolis, Minnesota  55402
Telephone:  (612) 607-7000
Fax Telephone:  (612) 607-7100

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

FACTS .....................................................................................................................2

    I.  Ogilvy's Relationship With Select Comfort .................................................2

    II.  Sleep Better's Non-Party Subpoenas ..........................................................2

    III. Sleep Better's Failure to Meet And Confer, Ogilvy's Agreement
         To Produce Documents, And Sleep Better's Refusal To Withdraw This Motion. ...........3

    IV. The Claims And Counterclaims At Issue In The Pending Litigation ..............................5

        A.  Select Comfort's Claims Cover Sleep Better's Unlawful Use of Select
            Comfort's Trademarks and Sleep Better's False Advertising ..............................5

        B.  Sleep Better's Sole Counterclaim is a Request for Declaratory Judgment...........6

    ARGUMENT ...........................................................................................................6

    I.  Sleep Better's Motion Is Moot-Ogilvy Agreed To Produce Documents.........................6

    II.  Sleep Better's Refusal To Meet And Confer Is Reason Enough To Deny The Motion...7

    III. Any Questions Regarding The Relevance Of Select Comfort's Target Market
         And Trademark "Development" Are Pending Before And Properly Decided
         By the Minnesota Court ...........................................................................7

    CONCLUSION ........................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) ....................................................................................9

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*,
197 F.3d 922 (8th Cir. 1999) ......................................................................................9

*Myers v. Andzel*,
No. 06-14420, 2007 WL 3256865 (S.D.N.Y. Oct. 15, 2007)....................................7

*PETCO Animal Supplies Stores, Inc. v. Insurance Co. of North America*,
No. 10-682, 2011 WL 2490298 (D. Minn. June 10, 2011)........................................9

*Select Comfort Corp. v. The Sleep Better Store, LLC*,
No. 11-621, 2012 WL 716667 (D. Minn. Mar. 2, 2012) ...........................................6

*Tri-Star Pictures, Inc. v. Unger*,
171 F.R.D. 94 (S.D.N.Y. 1997) .................................................................................7

*WH Holdings, LLC v. Ace American Insurance.*,
No. 09-7133, 2010 WL 3732149 (N.D. Ill. Sept. 17, 2010) .....................................9

**RULES**

Federal Rule of Civil Procedure 37 ....................................................................................7

## PRELIMINARY STATEMENT

This memorandum is submitted on behalf of Ogilvy Public Relations Worldwide Inc. ("Ogilvy") in opposition to the motion of The Sleep Better Store, LLC ("Sleep Better") to compel Ogilvy to produce documents in response to a broadly worded subpoena. Sleep Better seeks the documents in connection with the action entitled *Select Comfort Corp. v. The Sleep Better Store, LLC*, (D. Minn. Court File No. 0:11-cv-00621 (JNE/JSM)), to which Ogilvy is not a party. Sleep Better has served eleven broad-ranging subpoenas on non-parties for that Minnesota action *in addition* to serving 103 discovery requests, including requests for 64 categories of documents, directly on Select Comfort Corporation ("Select Comfort"). Ogilvy, a company that has provided public relations services to Select Comfort, is one of these unfortunate non-parties.

Sleep Better's subpoena addressed to Ogilvy is overly broad and seeks irrelevant information. Despite that, Sleep Better refused to participate in a meaningful meet and confer, but instead brought this motion. Nonetheless, Ogilvy agreed to produce relevant, responsive, non-privileged documents in response to Sleep Better's subpoena. In particular, Ogilvy agreed to produce any monitoring reports and related analysis that it has and that it provided to Select Comfort. However, Sleep Better insists on pressing forward with this improper motion. This motion is moot and should be denied.

Sleep Better insists on pursuing its moot motion against Ogilvy in an attempt to obtain rulings from this Court on issues squarely pending before the United States District Court for the District of Minnesota (the "Minnesota Court") with jurisdiction over the underlying action. In this motion, Sleep Better highlights two categories of information—Select Comfort's "development" of its trademarks and information regarding Select Comfort's target market—the relevance of which is pending before the Minnesota Court on Sleep Better's motion to compel discovery from Select Comfort. Sleep Better seeks to circumvent the Minnesota Court and

solicit a ruling on these issues this Court in New York.  In fact, despite having third-party subpoenas nearly identical to the Ogilvy subpoena pending in Minnesota, Sleep Better has not moved to compel discovery in Minnesota.  Rather, Sleep Better has selectively moved to compel discovery against non-parties in New York, Virginia, Colorado, and Illinois.  Sleep Better's strategy is clear—avoid the Minnesota court, which has already sanctioned Sleep Better for its discovery conduct, at the expense of non-parties that have agreed to produce documents.  The Court should not allow such harassment.

## FACTS

### I.    Ogilvy's Relationship With Select Comfort.

Ogilvy performed public relations work for Select Comfort in 2007 and 2008.  Ogilvy's work focused on ongoing media relations with Select Comfort's brand.  Although duplicative of documents Select Comfort has produced and continues to produce, Ogilvy has agreed to produce any monitoring reports and related analysis it has and that it provided to Select Comfort, including, to the extent it exists, the 2008 strategy report.

### II.   Sleep Better's Non-Party Subpoenas.

In Sleep Better's most recent flurry of non-party subpoenas, it served eight non-party subpoenas on entities that have provided services to Select Comfort.[1]  The entities include businesses that supply materials to Select Comfort and businesses, like Ogilvy, that have provided marketing or advertising services to Select Comfort.  The subpoenaed marketing and advertising businesses include Ogilvy, another New York entity, two Minnesota entities, and one Illinois entity.  The suppliers Sleep Better subpoenaed are in Virginia and Colorado.

Many of the subpoenas include the same broad, generic, and general requests.  With respect to Ogilvy, Sleep Better seeks:

---

[1] One non-party, Campbell Mithun, Inc., responded that it had no responsive documents.

1.    All documents and/or project files relating to Your work and/or services provided to Select Comfort, including but not limited to branding, rebranding, advertising, marketing, digital or e-commerce strategies and web initiatives, and any market, marketing or consumer research, studies, surveys or analysis.

2.    Any of Your documents or communications relating to Defendant [Sleep Better].

(Schedule A to Sleep Better's Subpoena to Ogilvy at 3, attached as Ex. 3 to the Affidavit of Keiko L. Sugisaka ("Sugisaka Aff."), counsel for Sleep Better, filed in support of Sleep Better's Mot. to Compel Docs. from Ogilvy.)

The only fair reading of these requests is that Sleep Better seeks any and all documents related in any way to Select Comfort or Sleep Better without regard to the subject matter or relevance to the underlying action. Due to the broad scope and extremely general nature of the requests, Ogilvy objected to the requests, but has been willing to engage in a meaningful dialogue with Sleep Better regarding a proper scope.

## III.    Sleep Better's Failure To Meet And Confer, Ogilvy's Agreement To Produce Documents, And Sleep Better's Refusal To Withdraw This Motion.

Despite Ogilvy's best efforts, Sleep Better refused to engage in a meaningful meet and confer to narrow the overly broad scope of Sleep Better's subpoena. On June 12, 2012, counsel for Ogilvy and counsel for Sleep Better spoke on the phone to discuss the non-party subpoenas. (Declaration of Dennis E. Hansen ("Hansen Decl.") ¶ 2.) The parties agreed that subpoenas served by Sleep Better fall into two general groups—subpoenas to Select Comfort's suppliers and subpoenas to entities that do or have provided advertising or marketing services to Select Comfort, such as Ogilvy. (*Id.* ¶ 3.) With respect to the second group, advertisers and marketers, Sleep Better's counsel agreed that the most efficient manner to proceed was for Sleep Better to narrow the scope of the subpoenas and explain the relevance of the documents sought from each non-party through letter. (*Id.* ¶ 4.) Due to this agreement, the parties did not substantively

address the scope or relevance of the subpoenas during the June 12 call. (*Id.* ¶ 5.)

After the June 12 call, Sleep Better failed to narrow its overly broad subpoena in any meaningful way, and refused to explain what relevant information it sought through its subpoena.  In its promised letter, Sleep Better did little more than re-state its request in similarly broad terms and did not even attempt to address the question of relevance.  (June 13, 2012 letter from Sleep Better's counsel to Ogilvy's counsel, attached as Ex. 8 to Sugisaka Aff.)  When Ogilvy pressed for the promised information and indicated that it would be willing to produce documents if Sleep Better narrowed the scope to relevant information, Sleep Better suddenly declared the meet and confer process over and filed this motion on July 5, 2012.  (June 29, 2012 letter from Sleep Better's counsel to Ogilvy's counsel, attached as Ex. 13 to Sugisaka Aff.)  It was not until June 29, in the same letter that indicated Sleep Better was filing motions to compel in the non-Minnesota jurisdictions, that Sleep Better attempted to explain the relevance of the information it seeks.  (*Id.*)  Recognizing its failure to satisfy its meet and confer obligation, Sleep Better indicated it would withdraw the motion if Ogilvy agreed to produce documents in response to the subpoena while the motion was pending. (*Id.*)

On July 5, the same day this motion was filed, but without knowledge of its filing, Ogilvy agreed to produce relevant documents in response to the subpoena. (July 5, 2012 letter from Ogilvy's counsel to Sleep Better's counsel, attached as Ex. A to Hansen Decl.)  In particular, Ogilvy is producing any monitoring reports and related analysis it has and that it provided to Select Comfort, including, to the extent it exists, the 2008 strategy report. (July 11, 2012 letter from Ogilvy's counsel to Sleep Better's counsel, attached as Ex. B to Hansen Decl.)  <u>This is precisely what Sleep Better is seeking.</u>  (Sugisaka Aff. ¶ 16.)  However, despite Ogilvy's

agreement and specific request for Sleep Better to withdraw this needless motion, Sleep Better refused.

Indicative of Sleep Better's motive to avoid the Minnesota Court, despite nearly identical requests and identical communications between Sleep Better and non-parties in Minnesota, Sleep Better did not file a motion to compel in Minnesota, avoiding arguing these issues to the Minnesota Court handling the underlying litigation.

## IV. The Claims And Counterclaims At Issue In The Pending Litigation.

### A. Select Comfort's Claims Cover Sleep Better's Unlawful Use of Select Comfort's Trademarks and Sleep Better's False Advertising.

Sleep Better employs multi-faceted sales and marketing schemes using Select Comfort's trademarks to confuse customers and divert them from Select Comfort's Sleep Number® products to Sleep Better's knock-off products. (*See* Select Comfort's First Am. Compl. ¶ 24 filed in underlying action, attached as Ex. 1 to Sugisaka Aff.) Sleep Better admits that it purchases Select Comfort's trademarks verbatim—Sleep Number® and Select Comfort®—as keywords on internet search engines like Google and Yahoo. (Sleep Better's First Am. Answer & Countercl. ¶¶ 25–26 filed in underlying action, attached as Ex. 2 to Sugisaka Aff.) When a consumer searches for these terms, Sleep Better displays misleading advertisements, such as "Number Bed(Official Site)" at www.sleepnumbercomparison.com. (Ex. 1 to Sugisaka Aff. ¶¶ 23, 27, 31, 32, 38.) Sleep Better's intent is clear—it seeks to mislead consumers to Sleep Better's website in hopes of capitalizing on the customer's mistaken belief that the "Number Bed(Official Site)" sells genuine Sleep Number® products. (*Id.* ¶¶ 33, 34, 40.) Real life, everyday consumers are being deceived and harmed by Sleep Better's tactics. (*Id.* ¶¶ 24, 31–33, 38–40, 49–51, 86, 89, 90, 98.) To further its scheme of deception and infringement, Sleep Better recently changed its brand from The Sleep Better Store to "Dream Number," which clearly seeks

to mislead the public and rip off genuine Sleep Number® products. (*Id.* ¶¶ 20, 24, 42, 43, 50–54, 60, 72, 100.)

In addition to trademark infringement, Sleep Better has engaged in false advertising. As set forth in Select Comfort's Amended Complaint, Sleep Better misled consumers into believing that its products are "Made in the USA" and they come with a "5 year full" warranty—both false claims. (*Id.* ¶¶ 106–108, 110–114.)

### B.   Sleep Better's Sole Counterclaim is a Request for Declaratory Judgment.

The Minnesota Court dismissed Sleep Better's attempt to state a claim against Select Comfort for tortious interference with Sleep Better's alleged contract with non-party, Overstock.com. *Select Comfort Corp. v. The Sleep Better Store, LLC*, No. 11-621, 2012 WL 716667, at *6, 10 (D. Minn. Mar. 2, 2012) (dismissing Sleep Better's tortious interference claim based on Select Comfort sending a cease and desist letter to a non-party pursuant to the *Noerr-Pennington* doctrine). Accordingly, Sleep Better's only counterclaim pending against Select Comfort is one for declaratory judgment that essentially mirrors one of Select Comfort's offensive trademark infringement claims. Specifically, Sleep Better seeks a declaratory judgment that its "use of 'Number Bed' and 'Number Air Mattress' do not infringe [Select Comfort's] rights in the 'Sleep Number' mark." (*See* Ex. 2 to Sugisaka Aff. at 22–23.) This counterclaim does not expand the scope of discovery.

### ARGUMENT

### I.   Sleep Better's Motion Is Moot—Ogilvy Agreed To Produce Documents.

This motion is unnecessary and moot—Ogilvy agreed to produce documents in response to the subpoena. In particular, Ogilvy has agreed to produce any monitoring reports and related analysis that it has and that it provided to Select Comfort, including, to the extent it exists, the 2008 strategy report—the exact documents Sleep Better claims to seek. Remarkably, despite

Sleep Better's prior agreement to withdraw the motion, Sleep Better now refuses to do so. Presumably, Sleep Better is pursuing its motion with the hope to obtain a favorable ruling on relevance (regardless of whether the motion is moot) from a Court unfamiliar with the underlying action and Sleep Better's past discovery tactics. Notably, Sleep Better has not moved to compel discovery against the two non-party advertising agencies in Minnesota on which it served subpoenas. No matter how badly Sleep Better wants to argue discovery motions outside of Minnesota, Sleep Better cannot escape the reality that this motion is moot. Accordingly, the Court should deny Sleep Better's motion as moot.

## II.   Sleep Better's Refusal To Meet And Confer Is Reason Enough To Deny The Motion.

The Court should also deny Sleep Better's motion due to its refusal to engage in a meaningful meet and confer. *See, e.g.*, *Myers v. Andzel*, No. 06-14420, 2007 WL 3256865, at *1 (S.D.N.Y. Oct. 15, 2007) (denying motion to compel for failure to engage in meet and confer). Federal Rule of Civil Procedure 37 requires Sleep Better to engage in a meet and confer with Ogilvy to resolve the dispute prior to bringing a motion to compel discovery. Fed. R. Civ. P. 37. The purpose of the meet and confer requirement is to avoid wasting the Court and the parties' time and resources with needless motion practice. *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 99 (S.D.N.Y. 1997) (denying motion to compel discovery where court found movant's claim that it engaged in a "good faith effort to resolve" discovery disputes was unsupported by the record). Sleep Better all but ignored the requirement, moving to motion practice after a brief meet and confer with the stated caveat that it was willing to withdraw its motion if Ogilvy agreed to produce documents. The Court should deny Sleep Better's motion for its failure to engage in a meaningful meet and confer. *Myers*, 2007 WL 3256865, at *1.

### III. Any Questions Regarding The Relevance Of Select Comfort's Target Market And Trademark "Development" Are Pending Before And Properly Decided By The Minnesota Court.

Sleep Better's motion is a transparent attempt to forum-shop the determination of discovery issues that are currently pending before the Minnesota Court. Sleep Better's brief only vaguely argues that information regarding Select Comfort's marketing and advertising strategies and analytics are relevant. As stated above, Ogilvy is producing any monitoring reports and related analysis it has and that it provided to Select Comfort. The only specific categories of information Sleep Better argues are relevant are: (1) the "development" of Select Comfort's trademarks; and (2) information regarding Select Comfort's target market. Although Sleep Better makes no effort to explain what it means by "development," Sleep Better defined this for discovery requests in the underling action to mean the reasons why Select Comfort chose the trademarks that it chose.

This Court need not address the issue of relevance, and should defer to the Minnesota Court which has a motion pending before it on these issues. When Sleep Better sought the same information from Select Comfort, Select Comfort objected to the relevance. Sleep Better moved to compel the information (*see* Sleep Better's Memo. of Law in Supp. of Its Mot. to Compel Discovery Resps. at 5, dated April 30, 2012 and filed in underlying action, attached as Ex. C to Hansen Decl.), but as Select Comfort argued to the Minnesota Court, it does not matter why Select Comfort chose the trademarks that it did a decade ago, what matters is that Sleep Better is infringing those marks today. It does not matter why Apple Computers chose to be Apple rather than Orange Computers, just as it does not matter why Select Comfort chose to be "Select Comfort" and sell the "Sleep Number" bed over a decade ago. If someone is infringing the existing mark, the infringer is liable for trademark infringement regardless of why the owner chose the mark they chose. (*See* Select Comfort's Memo. of Law in Opp'n to Sleep Better's

Mot. to Compel Discovery Resps. at 15, dated May 7, 2012 and filed in underlying action, attached as Ex. D to Hansen Decl.)  Furthermore, the identity of Select Comfort's particular target market is not relevant—Sleep Better admits that it specifically targets Select Comfort's customers and sells to any individual looking for a bed online—no additional evidence is needed to determine whether or not Sleep Better's products compete for the same customers as Select Comfort. (*See id.* at 6.)

Accordingly, the relevancy issue is currently before the Minnesota Court and a ruling on those issues is pending.  Sleep Better cannot circumvent the Minnesota Court's decision on relevance by seeking a ruling from a court outside Minnesota on the same issue.  Such blatant gamesmanship should not be allowed.  *WH Holdings, LLC v. Ace Am. Ins.*, No. 09-7133, 2010 WL 3732149, at * 3 (N.D. Ill. Sept. 17, 2010) (denying motion to compel where party sought documents from third-party, which judge in the underlying litigation deemed were not discoverable).  Further, even if the Minnesota Court rules in favor of Sleep Better, the information sought is more properly obtained from Select Comfort, not Ogilvy or the other non-parties. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50–51 (S.D.N.Y. 1996) (quashing non-party subpoena because it was unduly burdensome and seeks documents not relevant to the underlying litigation); *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (upholding trial court's order to quash a deposition subpoena for being duplicative and irrelevant); *PETCO Animal Supplies Stores, Inc. v. Ins. Co. of N. Am.*, No. 10-682, 2011 WL 2490298, at *26 (D. Minn. June 10, 2011) (quashing subpoena that sought documents from a non-party when the same information was available from party to the action).  Sleep Better's harassment of non-parties such as Ogilvy should immediately cease.

## CONCLUSION

Sleep Better's subpoena is overly broad and seeks to circumvent issues pending before the Minnesota Court handling the underlying litigation. Sleep Better failed to comply with the meet and confer process and has refused to withdraw this motion despite Ogilvy's agreement to produce documents. Accordingly, Sleep Better's motion should be denied, and its harassing conduct terminated.

Dated: July 13, 2012

**DAVIS & GILBERT LLP**

By: */s/ Jennifer Tafet Klausner*
Jennifer Tafet Klausner
1740 Broadway
New York, NY 10019
Telephone: (212) 468-4800
Fax Telephone: (212) 468-4888
JKausner@dglaw.com

- and -

**OPPENHEIMER WOLFF & DONNELLY LLP**

| | |
|---|---|
| Andrew S. Hansen | (MN #285894) |
| Samuel R. Hellfeld | (MN #390954) |
| Dennis E. Hansen | (MN #386734) |
| Cynthia S. Wingert | (MN #389122) |

Campbell Mithun Tower
222 South Ninth Street, Suite 2000
Minneapolis, Minnesota 55402
Telephone: (612) 607-7000
Fax Telephone: (612) 607-7100

**ATTORNEYS FOR OGILVY PUBLIC RELATIONS WORLDWIDE INC.**

## CERTIFICATE OF SERVICE

I certify that on this 13th day of July, 2012, a true and correct copy of the foregoing was served through the Court's electronic delivery service on:

> **Brian C. Avello, Esq.**
> **Joseph J. Ortego, Esq.**
> **Nixon Peabody, LLP**
> **50 Jericho Quadrangle**
> **Suite 300**
> **Jericho, NY 11753-2728**

Dated: July 13, 2012         **DAVIS & GILBERT LLP**

By: */s/ Jennifer Tafet Klausner*
Jennifer Tafet Klausner
1740 Broadway
New York, NY 10019
Telephone: (212) 468-4800
Fax Telephone: (212) 468-4888
JKausner@dglaw.com

- and -

**OPPENHEIMER WOLFF & DONNELLY LLP**

| | |
|---|---|
| Andrew S. Hansen | (MN #285894) |
| Samuel R. Hellfeld | (MN #390954) |
| Dennis E. Hansen | (MN #386734) |
| Cynthia S. Wingert | (MN #389122) |

Campbell Mithun Tower
222 South Ninth Street, Suite 2000
Minneapolis, Minnesota 55402
Telephone: (612) 607-7000
Fax Telephone: (612) 607-7100

**ATTORNEYS FOR OGILVY PUBLIC RELATIONS WORLDWIDE INC.**

2951545 v.3